UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **3D SYSTEMS, INC.**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:05-cv-74891 |
| v. | ) | |
| | ) | Hon. Avern Cohn |
| **ENVISIONTEC, INC., ENVISIONTEC GMBH**, | ) | Magistrate Judge Hon. R. Steven |
| and **SIBCO, INC.**, | ) | Whalen |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' EMERGENCY MOTION TO STAY PROCEEDINGS

Defendants Envisiontec, Inc. and Sibco, Inc. by and through their counsel, hereby move this Court for an order staying all further proceedings in this matter. Pursuant to a 2002 Consent Judgment, between the U.S. Department of Justice and Plaintiff 3D Systems, Sony Corporation was granted a fully transferable license to practice all of 3D Systems' stereolithography patents. In May 2006, Sony withdrew from the U.S. stereolithography market. As a result, Sony and Defendants are in the process of negotiating a possible transfer of that license to Defendants. In the alternative, however, Defendants will formally request that the Department of Justice intervene and compel 3D Systems to license its stereolithography patents to Defendants pursuant to the terms of the 2002 Consent Judgment.

Defendants do not concede the infringement of any of the twelve (12) patents-in-suit.[1]

Nevertheless, the transfer of the Sony License or the granting of a new license under the 2002

Consent Judgment would dispose of all of 3D Systems' claims in this case.  In addition, no

discovery has yet been conducted and the first substantive proceeding--a tutorial for the Court--is

scheduled for July 24th.  Thus, the requested stay promises to allow the parties and the Court to

avoid the substantial expense involved in proceeding with this case.  Defendants respectfully

request that the Court hear this motion on an emergency, expedited basis prior to July 24th.

Pursuant to *Local Rule* 7.1, Defendants requested Plaintiff's concurrence in the relief

sought.  Concurrence was not given.


Dated: July 17, 2006                    Respectfully submitted,

                                        ENVISIONTEC, INC., AND SIBCO, INC.

                                            s/R. Terrance Rader
                                        R. Terrance Rader (P28747)
                                        Steven R. Hansen (P69144)
                                        RADER FISHMAN & GRAUER PLLC
                                        39533 Woodward Avenue, Suite 140
                                        Bloomfield Hills, MI 48304
                                        Tel: 248-594-0600/ Fax: 248-594-0610
                                        Email: rtr@raderfishman.com

                                        *Attorneys for Defendants*

---

[1] While intended to facilitate further licensing discussions, this motion should *not* be interpreted as a concession that Envisiontec believes it has infringed any of the patents-in-suit.  To the contrary, Envisiontec has its own patents and applications which cover its unique and completely different approach to rapid prototyping.  Moreover, Envisiontec believes that 3D Systems filed this case because it hopes to gain access to Envisiontec's superior technology by coercing Envisiontec into entering into a cross-licensing arrangement, which Envisiontec has refused to do.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**3D SYSTEMS, INC.**,                    )
                                         )
      Plaintiff,                 )
                                         )   Case No. 2:05-cv-74891
  v.                                   )
                                         )   Hon. Avern Cohn
**ENVISIONTEC, INC., ENVISIONTEC GMBH**, )   Magistrate Judge Hon. R. Steven
and **SIBCO, INC.**,                     )   Whalen
                                         )
      Defendants.                )
_____)

**DEFENDANTS' BRIEF IN SUPPORT OF EMERGENCY MOTION
TO STAY PROCEEDINGS**

       Defendants Envisiontec, Inc. and Sibco, Inc. by and through their counsel, hereby submit

this brief in support of their motion to stay proceedings in this matter.

**ISSUES PRESENTED**

Should the Court stay this patent infringement lawsuit to allow Defendants either to seek a license under 3D Systems' entire stereolithography patent portfolio, given that 3D Systems is obligated to grant such a license under a 2002 Consent Judgment and given that such a license would dispose of all of 3D Systems' claims in this case, or to seek a reopening of the prior action against 3D Systems by the U.S. Department of Justice, as a result of 3D's violation of the 2002 Consent Judgment?

## **CONTROLLING AUTHORITIES**

*Landis, et al. v. North American Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L.Ed. 153 (1936).

*The Ohio Governmental Council v. U.S. District Court, Southern District of Ohio, et al.*, 565 F.2d 393 (6th Cir. 1977).

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988).

Final Judgment, dated April 17, 2002, *U.S. v. 3D Systems Corporation, et al.*, Case No. 1:01CV01237 (GK) (D. D.C.).

## PRELIMINARY STATEMENT

In its June 2006 Amended Complaint, Plaintiff 3D Systems, Inc. ("3D Systems") asserts that Defendants infringe twelve (12) of its U.S. stereolithography patents. Defendants have denied infringement and have counterclaimed, asserting, *inter alia*, that 3D's activities are in violation of U.S. anti-trust laws. In particular, 3D Systems' actions are in violation of a 2002 Consent Judgment which was intended to resolve anti-trust claims filed by the U.S. Department of Justice. (Exh. 1).

In the 2002 Consent Judgment, 3D Systems was obligated to license the use of its North American patent portfolio for the technology at issue in this case. The licensed patents include each and every patent-in-suit in this matter. 3D Systems initially chose Sony Corporation ("Sony") as its licensee. However, in May 2006, Sony withdrew from the U.S. stereolithography market, leaving 3D Systems without a licensee and leaving its obligations under the 2002 Consent Judgment unfulfilled. Defendants are currently the only company with the ability to participate in the stereolithography market in the United States, and as such, are the only candidate suited to step into Sony's shoes. Notwithstanding its obligations under the 2002 Consent Judgment, 3D Systems has refused to even discuss granting Defendants a license similar to Sony's. Nevertheless, Defendants are actively pursuing obtaining the Sony License, and if necessary, will formally seek the intervention of the Department of Justice. Talks with Sony are tentatively scheduled to begin as early as next week.

No discovery has yet been conducted in this case. Nor have any substantive proceedings taken place. Because the transfer of Sony License will dispose of all of 3D Systems' claims in this case, Defendants seek to stay this litigation until its licensing discussions are concluded or

the Defendants are afforded the opportunity to seek intervention by the U.S. Department of Justice.  Such a stay is well within the inherent powers of this Court and will conserve substantial resources for both the Court and the parties.   Because the Court has scheduled a tutorial for July 24, 2006, Defendants request that this motion be heard on an emergency, expedited basis to allow the Court and the parties to avoid the unnecessary expense of proceeding in this case.

**FACTUAL BACKGROUND**

A.      _US v. 3D Systems Corporation, et al._ and the 2002 Consent Judgment

Plaintiff 3D Systems holds a vast array of patents in the field of "rapid prototyping" a technology that is used to quickly create prototypes of various items, such as automotive parts, jewelry, and medical devices.  In particular, 3D Systems holds a number of rapid prototyping patents in the technology known as "stereolithography," which broadly involves using computer aided design data to create a three-dimensional object by applying radiation to a liquid, photocurable material.  3D Systems has asserted twelve (12) of its stereolithography patents against Defendants in this lawsuit.  Defendants deny infringing any of the asserted patents.[1]

In 2001, 3D Systems sought to acquire DTM Corporation ("DTM"), another rapid prototyping company.  In June of that year, the U.S. Department of Justice ("DOJ") filed suit against both 3D Systems and DTM seeking to enjoin the acquisition under Section 7 of the Clayton Act on the grounds that it would substantially lessen competition in the industrial rapid

---

[1] This motion, while intended to facilitate further licensing discussions, should _not_ be interpreted as a concession that Envistionec believes it has infringed any of the patents-in-suit.  To the contrary, Envistionec has its own patents and applications which cover its unique and completely different approach to rapid prototyping.  Moreover, Envistionec believes that 3D Systems filed this case because it hopes to gain access to Envisiontec's superior technology by coercing Envisiontec into entering into a cross-licensing arrangement, which Envisiontec has refused to do.

prototyping market in the United States.[2]  In particular, the DOJ contended that the merger

would have given 3D Systems a market share of over 80% of the U.S. industrial rapid

prototyping market.[3]

The DOJ anti-trust case was eventually resolved by a Consent Judgment in April 2002.[4]

Pursuant to the terms of the 2002 Consent Judgment, 3D Systems was obligated to grant a

"perpetual, assignable, transferable, fully-paid up" non-exclusive license under all of its North

American patents to make, use, and sell products in the United States in the rapid prototyping

fields of stereolithography or selective laser sintering.[5]  The required license included every

patent that 3D Systems has asserted against Defendants.[6]

The DOJ retained sole discretion to approve the licensee selected by 3D Systems.  In

addition, 3D Systems was ordered to select a licensee who could and would use the license as

part of a "viable, ongoing commercial enterprise engaged in the sale of [rapid prototyping]

---

[2] *See* Verified Complaint, dated June 6, 2001, in *U.S. v. 3D Systems Corporation, et al.,* Case No. 1:01CV01237 (GK) (D. D.C), Exhibit 2 hereto ("DOJ Complaint") at ¶ 1.  The Exhibits referenced herein are provided in the accompanying Exhibit Appendix.
[3] *Id.* at ¶ 3.
[4] *See* Final Judgment, dated April 17, 2002, in *U.S. v. 3D Systems Corporation, et al.,* Case No. 1:01CV01237 (GK) (D. D.C.), Exhibit 1 hereto ("2002 Consent Judgment").
[5] 2002 Consent Judgment at ¶¶ II(E) and IV(A) (Exh. 1).  "Selective Laser Sintering" is a process that uses computer-aided design data to form a three dimensional object by applying heat to a sinterable, powder material.  Selective Laser Sintering was the focus of DTM's business prior to its acquisition by 3D Systems.
[6] 2002 Consent Judgment at ¶ II(H) (Exh. 1).  Paragraph II(H) of the Consent Judgment references an Appendix I that includes a non-exclusive list of the licensed patents.  The entered version of the 2002 Consent Judgment obtained by Defendants did not attach Appendix I.  However, the proposed judgment provided on the DOJ's website included the appendices, and Appendix I from the proposed judgment is provided as Exhibit 3 hereto.   As specified in paragraphs 13-24 of 3D Systems' Amended Complaint, dated June 2, 2006, the patents-in-suit are U.S. Patent Nos. 5,569,431; 5,571,471; 5,630,981; 4,929,402; 4,999,143; 5,137,662; 5,345,391; 5,174,931; 5,651,934; 5,891,382; 5,902,537; and 6,048,487.

Industrial Equipment in North America."  Moreover, the stated intent of the 2002 Consent Judgment's licensing obligations was to "remedy the competitive harm alleged in the [DOJ's] Complaint."[7]  By its own terms, the 2002 Consent Judgment remains in force until 2012 and allows the DOJ to "apply to [the] Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe the Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions."[8]

B.     <u>Sony's Withdrawal from the Market and Defendants' Pursuit of the Sony License</u>

Pursuant to the 2002 Consent Judgment, 3D Systems eventually granted a license to Sony (the "Sony License") to practice 3D's patents in the field of stereolithography, allowing Sony to provide its "Solid Creator" stereolithography product in the United States.[9]  However, in May of this year, Sony announced that it was withdrawing from the market and that it would no longer provide the Solid Creator in the United States.[10]

Defendants quickly contacted Sony to attempt to purchase the Sony License[11] and also informed the DOJ about Sony's withdrawal from the market.[12]  The DOJ indicated that it was concerned about Sony's withdrawal and the fact that 3D Systems' licensing obligations under the 2002 Consent Judgment were no longer being fulfilled.[13]

---

[7] 2002 Consent Judgment at ¶ IV(N) (Exh. 1).
[8] 2002 Consent Judgment at ¶ XII (Exh. 1).
[9] *See* Selected excerpts from "3D Systems Corporation—2003 Annual Report," attached as Exhibit 4.
[10] *See* Letter, dated May 9, 2006 from Gary Barnak, the Director of Capital Equipment Sales for Sony Manufacturing Systems America, Inc., Exhibit 5.
[11] *See* E-mail, dated May 31, 2006 from Al Siblani, Envisiontec, Inc. CEO, to Gary Barnak, and E-mail, dated May 31, 2006 from Gary Barnak to Al Siblani, Exhibit 6.
[12] *See* Declaration of Steven R. Hansen, dated July 17, 2006 (Hansen Decl.) at  ¶¶ 2-4.
[13] *Id*. at ¶ 5.  The Hansen Decl. is filed concurrently herewith.

Just last week, Sony indicated that it would like to quickly begin discussions with Defendants concerning the transfer of the Sony License.[14]  Talks are tentatively scheduled to begin the week of July 24th.[15]  In the event that Sony is unwilling to transfer the Sony License, Defendants have also asked 3D Systems if it would discuss the possibility of granting Defendants a license on terms similar to those of the Sony License.  However, 3D Systems has not agreed to even discuss the matter.[16]  If Defendants are unsuccessful in obtaining the Sony License or a new license from 3D Systems, they will formally request that the DOJ intervene and exercise its authority under the 2002 Consent Judgment to compel 3D Systems to grant such a license.

## ARGUMENT

### THE COURT SHOULD EXERCISE ITS INHERENT POWER TO STAY THIS CASE PENDING THE RESOLUTION OF DEFENDANTS' AND/OR THE DOJ'S LICENSING EFFORTS

It is well-settled that the Court has the authority to stay this lawsuit pending the resolution of Defendants' efforts to obtain the Sony License and/or the DOJ's efforts to compel 3D Systems to grant a license to Defendants.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis, et al., v. North American Co.*, 299 US 248, 254, 57 S. Ct. 163, 81 L.Ed. 153 (1936).  *See also The Ohio Environmental Council v. U.S. District Court, Southern District of Ohio, et al.*, 565 F.2d 393,

---

[14] *See* E-mail from Gary Barnak to Al Siblani, dated July 13, 2006, Exhibit 7.
[15] Hansen Decl. at ¶ 7.
[16] *Id.* at ¶ 6 and E-mail from Steven R. Hansen to Stephen Goldman, counsel for 3D Systems, dated July 14, 2006, Exhibit 8.

396 (6th Cir. 1977). It is similarly well-settled that this inherent power extends to patent suits such as this one. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988); *Gonnocci v. Three M Tool & Machine, Inc., et al.*, 2003 U.S. Dist. LEXIS 24423 at *5 (E.D. Mich. 2003).

The decision to grant a stay rests within the sound discretion of the Court. *The Ohio Governmental Council*, 565 F.2d at 396; *Gonnocci*, 2003 U.S. Dist. LEXIS 24423 at *5. In considering whether to grant a stay, courts consider factors such as the prejudice to the parties of granting a stay, whether a stay will simplify the issues in the case, and the degree of completion of discovery. *Id.* at *7. In this case, each of these factors clearly warrants the imposition of a stay.

First, the transfer of the Sony License or the grant of a new license to Defendants under the terms of the 2002 Consent Judgment would dispose of *all* of 3D Systems' claims in this case. As required by the 2002 Consent Judgment, the Sony License covers every patent-in-suit in this case. Moreover, the 2002 Consent Judgment forbids 3D Systems from asserting claims of patent infringement against the selected licensee based on activities occurring before the Consent Judgment was entered.[17]

Second, no discovery has been conducted in this case. While both parties have served discovery requests upon one another, neither party has yet responded to the other's discovery requests. Nor have the parties yet served their initial disclosures under *Fed. R. Civ. P.* 26(a).

Third, other than initial pleadings and a brief telephonic status conference with the Court, no substantive proceedings have yet occurred in this case. The first such proceeding, a tutorial for the Court, is currently scheduled for Monday, July 24th.

---

[17] 2002 Consent Judgment at IV(G) (Exh.1).

9

Fourth, a stay would not prejudice 3D Systems in any way.  Any damages to which 3D Systems could possibly be entitled would continue to accrue during the stay period.  In addition, by its own conduct, 3D Systems has effectively conceded that monetary damages are sufficient to redress its alleged injuries.  Moreover, 3D Systems filed its original complaint in *December 2005*.  Some six months later, it filed its Amended Complaint in order to add five (5) additional patents to the case—all of which had issued at the time of the original complaint in December 2005.  Thus, any claims of "irreparable harm" or other prejudice from a stay would be specious, at best.

Given the foregoing, a stay promises to save the Court and the parties substantial time and expense involved in proceeding with this case, including the near term expense of conducting a tutorial and beginning discovery.  Given the balance between the substantial economies and the negligible prejudice to 3D Systems, the Court should exercise its discretion and stay further proceedings until the Defendants' and/or the DOJ's licensing efforts are resolved.

## <u>CONCLUSION</u>

For the reasons provided above, Defendants respectfully request that the Court stay all further proceedings pending the resolution of Defendants' and/or the DOJ's licensing efforts.  A proposed order is submitted concurrently herewith.


Dated: July 17, 2006                    Respectfully submitted,

                                        ENVISIONTEC, INC. AND SIBCO, INC.

                                        ___s/R. Terrance Rader_____
                                        R. Terrance Rader (P28747)
                                        Steven R. Hansen (P69144)
                                        RADER FISHMAN & GRAUER PLLC
                                        39533 Woodward Avenue, Suite 140
                                        Bloomfield Hills, MI 48304
                                        Tel: 248-594-0600/ Fax: 248-594-0610
                                        Email: rtr@raderfishman.com

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Susan M. Kornfield and Alan M. Harris, and I hereby certify that I have served the foregoing paper via e-mail and first-class mail, postage prepaid on the following non-ECF participants:

    Sidney David
    Stephen B. Goldman
    Samantha M. Kameros
    LERNER, DAVID, LITTENBERG,
    KRUMHOLZ & MENTLIK, LLP
    600 South Avenue West
    Westfield, NJ 07090-1497

                                             _s/R. Terrance Rader_____
                                             R. Terrance Rader (P28747)
                                           RADER FISHMAN & GRAUER PLLC
                                           39533 Woodward Avenue, Suite 140
                                           Bloomfield Hills, MI 48304
                                           Tel: 248-594-0600
                                           Fax: 248-594-0610
                                           Email: rtr@raderfishman.com

R0361827.DOC