UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **3D SYSTEMS, INC.**,               ) | |
|                                                    ) | |
| Plaintiff,              ) | |
|                                                    ) | Case No. 2:05-cv-74891 |
| v.                                              ) | |
|                                                    ) | Hon. Avern Cohn |
| **ENVISIONTEC, INC., ENVISIONTEC GMBH**, ) | Magistrate Judge Hon. R. Steven |
| and **SIBCO, INC.**,                ) | Whalen |
|                                                    ) | |
| Defendants.          ) | |
|                                                    ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

Pursuant to Local Rule 7.1(c), Defendants Envisiontec, Inc. and Sibco, Inc. (collectively, "Defendants") hereby submit this Reply Brief in support of their Emergency Motion to Stay Proceedings, dated July 17, 2006.

## ARGUMENT

In requesting a stay of proceedings, Defendants are simply asking for an opportunity to resolve this litigation without incurring the extraordinary expense involved in defending a twelve (12) patent law suit. Defendants do not infringe any of the patents-in-suit. Nevertheless, 3D Systems has made clear--both in this case and numerous others--that it is ready, willing, and able to use its economic might and the costly process of patent litigation to cripple Envisiontec and attempt to drive it out of business. Moreover, 3D Systems hopes to force Defendants to cross-license their superior rapid prototyping technology, a strategy that--if successful--would allow 3D Systems to further perpetuate its unlawful market domination.

3D Systems does not dispute that the Court has the authority to stay proceedings. During the recent tutorial, the Court seemed concerned that it was being asked to interfere with the jurisdiction or authority of the Department of Justice and/or the Court that entered the 2002 Consent Judgment--the U.S. District Court for the District of Columbia. Such is not the case. Defendants simply seek to put this action on hold while they attempt to dispose of 3D Systems' claims by obtaining the Sony License and/or the assistance of the Department of Justice. Further, Defendants' proposed order provides for monthly status reports during the pendency of the stay, allowing the Court to ensure that Defendants' negotiations with Sony and/or the efforts of the Justice Department proceed at a satisfactory pace.

Tellingly, 3D Systems fails to identify *any* specific prejudice that it would suffer from the imposition of a stay. Instead, it meekly suggests that a stay would be "unfair and prejudicial," without identifying any specific harm. See Plaintiff's Response at 5. The fact that 3D Systems refuses to agree to a stay notwithstanding the absence of such prejudice only further belies its

improper motives in bringing this lawsuit: to drain Defendants' resources and extort a cross-license from them.  Conversely, moving forward with the case at this juncture would prejudice Defendants by forcing them to incur needless business disruptions and litigation expenses--including those resulting from the upcoming production of documents in response to some *ninety-five* document requests served by 3D Systems.

     3D Systems does not dispute that the Sony License--or any other license granted pursuant to the 2002 Consent Judgment--covers *each and every* patent-in-suit in this action.  However, it suggests that the acquisition of the Sony License will not resolve its patent infringement claims because "The Acquirer" under the 2002 Consent Judgment "does not include successors in interest."  Plaintiff's Response at 7.  3D Systems further states that the 2002 Consent Judgment "only bars suit for technology sold by the Acquirer 'outside of North America' prior to the date of the Final Judgment."  *Id.* at 7.  First, nowhere does the 2002 Consent Judgment state that "the Acquirer" does not include successors in interest.  This is an unsupported assertion.  Second, 3D Systems' assertions regarding the territorial scope of the covenant not-to-sue are incorrect.  The Judgment specifically states that "Defendants shall not assert against Acquirer any claims (1) for patent or copyright infringement *in North America* for products made, sold, or used pursuant to the licenses granted in accordance with Section IV(A) and (B) of this Final Judgment."  Defendants' Exhibit 1 at ¶ IV(G) (emphasis added).

     Based on its mischaracterization of the 2002 Consent Judgment, 3D Systems threatens to pursue a damages award against Defendants *even if* they acquire the Sony License.  Plaintiff's Response at 8.  This threat further reveals 3D Systems' willingness to flaunt its obligations under the 2002 Consent Judgment, which specifically provides that 3D Systems "shall not take any

3

action that will impede, jeopardize, or delay in any way the . . . operation, or divestiture of the Divestiture Assets."[1]  Defendants' Exhibit 1 at ¶ IV(L).

The 2002 Consent Judgment was entered to remedy the competitive harm stemming from 3D Systems' acquisition of DTM Corporation.  It is undisputed that in light of Sony's withdrawal from the U.S. industrial rapid prototyping market, that competitive harm is now without remedy.  It is similarly undisputed that the only player in the U.S. industrial rapid prototyping market who can step into Sony's shoes and restore competition is Envisiontec.

3D Systems goes to great lengths to convince the Court of its compliance with the 2002 Consent Judgment.  However, it is undisputed that the 2002 Consent Judgment called for 3D Systems to grant a *perpetual* license to a company that would use the licensed patents "as part of a viable, ongoing commerical enterprise" and which "has the intent and capability . . . of *competing effectively"* in the U.S. industrial rapid prototyping market.  Defendants' Exhibit 1 at ¶ IV(N) (emphasis added).  Sony's withdrawal from the market makes clear that these conditions were *not met.*  Moreover, Paragraph XI of the 2002 Consent Judgment specifically provides that 3D Systems "may not reacquire any part of the Divestiture Assets during the term of this Final Judgment."  Defendants' Exhibit 1 at ¶ XI.  Because Sony is no longer in the market, 3D Systems has effectively reacquired the Divestiture Assets (i.e., the licensed patent rights), in contravention of the 2002 Consent Judgment.

It is further undisputed that the 2002 Consent Judgment gives the DOJ the power to remedy Sony's withdrawal from the market.  Not only does the Judgment provide for the

---

[1] The 2002 Consent Judgment refers to the licensed patent rights as the "Divestiture Assets."  *See* Defendants' Exhibit 1 at ¶ II(E).

4

compliance inspection process discussed by 3D Systems, but it also allows the DOJ to seek modification of the Judgment.  *Id*. at ¶¶ X and XII.  While 3D Systems belabors the fact that the DOJ has yet to exercise its compliance inspection authority, this simply reflects the fact that Sony's withdrawal from the market was only recently brought to the DOJ's attention—and *not* by 3D Systems.  Of course, Defendants are proceeding with the most prudent course of action by seeking to obtain the Sony License from Sony before formally seeking the intervention of the DOJ.  However, the 2002 Consent Judgment makes clear that the DOJ has an interest in remedying Sony's withdrawal from the market—as well as the authority to do so.  Given the foregoing, the Court should exercise its inherent authority and grant the requested stay.

                Respectfully submitted,

Dated: July 31, 2006              ENVISIONTEC, INC. and SIBCO, INC.

          s/R. Terrance Rader
R. Terrance Rader (P28747)
Steven R. Hansen (P69144)
RADER FISHMAN & GRAUER PLLC
39533 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304
Tel: 248-594-0600/ Fax: 248-594-0610
Email: rtr@raderfishman.com

*Attorneys for Defendants*
.

## CERTIFICATE OF SERVICE

    I hereby certify that on July 31, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Susan M. Kornfield and Alan M. Harris, and I hereby certify that I have served the foregoing paper via e-mail and first-class mail, postage prepaid on the following non-ECF participants:

    Sidney David
    Stephen B. Goldman
    Samantha M. Kameros
    LERNER, DAVID, LITTENBERG,
    KRUMHOLZ & MENTLIK, LLP
    600 South Avenue West
    Westfield, NJ 07090-1497

                                                                                     s/R. Terrance Rader
                                                                                    R. Terrance Rader (P28747)
                                                                                    RADER FISHMAN & GRAUER PLLC
                                                                                    39533 Woodward Avenue, Suite 140
                                                                                    Bloomfield Hills, MI 48304
                                                                                   Tel: 248-594-0600
                                                                                    Fax: 248-594-0610
                                                                                    Email: rtr@raderfishman.com

R0367554.DOC