UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| 3D SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:05-cv-74891 |
| v. | ) | |
| | ) | Hon. Avern Cohn |
| ENVISIONTEC, INC., ENVISIONTEC GMBH, | ) | Magistrate Judge Hon. R. Steven |
| and SIBCO, INC., | ) | Whalen |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ENVISIONTEC'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFF 3D SYSTEMS, INC.'S MOTION TO DISMISS OR BIFURCATE
ENVISIONTEC, INC.'S ANTITRUST COUNTERCLAIM**

Defendant Envisiontec, Inc. ("Envisiontec") submits this Supplemental Brief In Support

of Its Opposition to Plaintiff 3D Systems, Inc.'s ("3D Systems") Motion to Dismiss or Bifurcate

Envisiontec, Inc.'s Antitrust Counterclaim, dated August 31, 2006.

Envisiontec's antitrust counterclaim is its only means of defense against 3D Systems' on-going campaign to put it out of business. Dismissal or bifurcation/stay would leave Envisiontec defenseless against 3D Systems' anti-competitive tactics. After Envisiontec refused to cross-license its rapid prototyping technology to 3D Systems, 3D Systems filed this lawsuit with the expectation that Envisiontec would immediately fold. When Envisiontec did not fold, 3D Systems began a campaign of anticompetitive warfare, including extrajudicial threats and intimidation tactics intended to scare off Envisiontec's current and potential customers. 3D Systems has also continued its unlawful efforts to steal Envisiontec's technology. Envisiontec's antitrust counterclaim is its only recourse against 3D Systems' guerilla tactics--none of which are protected by the *Noerr-Pennington* doctrine behind which 3D attempts to hide.

Any suggestion that 3D Systems is legitimately protecting its patent rights is quickly belied by the economics of this case. The small amount in controversy, no more than about $200,000, simply does not justify the expense of this twelve (12) patent law suit. Thus, 3D Systems' pursuit of this case--like its extrajudicial misconduct--can only be understood as an anti-competitive tactic intended to crush Envisiontec. Accordingly, 3D Systems' Motion to Dismiss or Bifurcate Envisiontec's Antitrust Counterclaim should be denied, and the Court should enjoin 3D Systems from further attempting to injure Envisiontec's business.

3D Systems is threatening and intimidating Envisiontec's foreign and domestic customers and prospective customers. Three months after 3D Systems filed this lawsuit--when it became clear that Envisiontec would not fold--3D issued a press release publicly accusing Envisiontec's Perfactory and Vanquish products of patent infringement. The timing of the press release was intended to coincide with an upcoming Las Vegas trade show in June 2006. At the Las Vegas

trade show, 3D Systems told Envisiontec customers that Envisiontec would soon be put out of business. 3D Systems also told Envisiontec's customers in Chicago and Texas the same thing.[1] 3D Systems' tactics have been successful. For example, during a recent presentation of Envisiontec's technology, DaimlerChrysler told Envisiontec that it had concerns about Envisiontec's survival in light of 3D's activities.[2]

3D Systems has also waged war against Envisiontec's international business in Europe and Asia. 3D Systems targeted Envisiontec's customers and prospective customers prior to trade shows in Hong Kong, Switzerland, and India. 3D Systems told the customers and prospects that they would be sued if they purchased Envisiontec's products. 3D Systems also told them that Envisiontec would soon be put out of business and unable to supply them with resins, service, and other accessories needed to use Envisiontec's rapid prototyping equipment. As a result, Envisiontec was forced to contact its customers and prospects to assure them that this lawsuit--which involves only U.S. patents--had no bearing on their ability to use Envisiontec's products. Envisiontec was also forced to offer indemnification to its customers and prospects to retain or obtain their business.[3]

Despite Envisiontec's efforts to reassure its customers, 3D Systems' campaign has caused Envisiontec to lose significant sales volume abroad. For example, in India 3D Systems' tactics

---

[1] Declaration of A. El. Siblani in Support of Envisiontec's Supplemental Brief In Opposition to Plaintiff 3D Systems, Inc.'s Motion to Dismiss or Bifurcate, filed concurrently herewith ("Siblani Supp. Dec.") at ¶ 2; *see also* Press Release, dated March 9, 2006 entitled "3D Systems Announces Suit Against Envisiontec Alleging Infringement of Its Stereolithography Patents" (Exhibit A).
[2] Siblani Supp. Dec. at ¶ 2.
[3] Siblani Supp. Dec. at ¶¶ 3-5.

have caused Envisiontec's sales of the PERFACTORY device to plummet from an average of about two (2) units per month to a total of three (3) units over the last eight (8) months. Similarly, in Hong Kong 3D Systems' tactics caused a fifty percent drop in Envisiontec's sales in the three months following the 2006 Hong Kong trade show as compared to the same period in 2005. In Europe the drop was even more dramatic, about 70%.[4]

While Envisiontec is indisputably suffering the effect of 3D Systems' anticompetitive warfare, so too are consumers. Companies such as Ford, DaimlerChrysler and Protogenic have told Envisiontec that they would like to see competition in the U.S. rapid prototyping market. Unfortunately, 3D Systems' monopolistic stranglehold has deprived these companies of rapid prototyping solutions other than the archaic, slower, and less efficient SLA technology offered by 3D Systems. If it dismisses or bifurcates Envisiontec's antitrust counterclaim, the Court will enable 3D Systems' to deny the marketplace access to superior rapid prototyping technologies, such as those offered by Envisiontec. [5]

Although 3D Systems has euphemistically mischaracterized its threats as "negotiations" (3D Systems' Reply Brief at 5), 3D Systems *does not dispute* that its CEO threatened to put Envisiontec out of business if it did not cross-license its superior rapid prototyping technology to 3D Systems. Moreover, 3D Systems' efforts to steal Defendants' technology are on-going. In September, Envisiontec attended the IMTS trade show in Chicago and displayed the Vanquish device. To protect exhibitors and their technologies, the IMTS rules prohibit the taking of photographs. Envisiontec prominently displayed its own signs prohibiting photography.

---

[4] Siblani Supp. Dec. at ¶ 6.
[5] Declaration of A. El. Siblani, dated August 31, 2006 at ¶ 3, (Document 31) which was submitted with Envisiontec's Opposition to 3D's Motion to Dismiss or Bifurcate Envisiontec's Antitrust Counterclaim.

Nevertheless, in clear violation of show rules, 3D Systems' Vice President of North American sales and another 3D Systems employee approached Envisiontec's booth and took several photographs of the Vanquish machine.   After trade show security personnel intervened, 3D Systems was required to delete the photographs and warned to refrain from taking further pictures.[6]

Any contention that 3D Systems is legitimately seeking to protect its patent portfolio is belied by the economics of this case.  To date, Envisiontec's total revenues from U.S. sales of the accused devices amounts to only about $ 4.4 million.[7]  Even at a conservatively high royalty rate of 5%, 3D Systems' damages would amount to no more than approximately $200,000, which is dwarfed by the expense of even small scale patent litigation, not to mention a twelve (12) patent case such as this. Given the near term expiration of many of the patents-in-suit[8] and the Supreme Court's recent mandate restricting injunctive relief in patent lawsuits, [9] 3D Systems' request for an injunction does not add any legitimacy to its pursuit of this case.  To the contrary, 3D Systems' undisputed goal is to drive Envisiontec from the market place and grab its superior rapid prototyping technology, not to legitimately exercise its alleged patent rights.  The protections of the antitrust laws are vital to Envisiontec's survival, and Envisiontec will be denied those protections if the Court dismisses or bifurcates its antitrust counterclaim.

---

[6] Siblani Supp. Dec. at ¶ 7.  *See also* Incident Report B-7, prepared by the IMTS Show Security Officers, attached as Exhibit B.

[7] Siblani Supp. Dec. at ¶ 8.

[8] For example, U.S. Patent Nos. 4,929,402, 5,571,471, and 5,630,981 all expire on May 29, 2007.

[9] Even if infringement liability were found, 3D would not be entitled to an injunction in light of the Supreme Court's recent decision in *Ebay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006).  In *Ebay*, the Supreme Court held that a prevailing patent holder must demonstrate: (1) that the patent holder has suffered an irreparable injury (2) the inadequacy of monetary damages, (3) that considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted, and (4) that the public

4

As discussed above, 3D Systems' extrajudicial efforts to injure Envisiontec's business are on-going and are damaging Envisiontec.  Thus, Envisiontec respectfully requests that the Court enjoin 3D Systems from threatening or intimidating Envisiontec's customers or falsely representing to them that Envisiontec will be put out of business.

Respectfully submitted,

Dated: November 10, 2006

ENVISIONTEC, INC. and SIBCO, INC.

_s/R. Terrance Rader_____
R. Terrance Rader (P28747)
Steven R. Hansen (P69144)
RADER FISHMAN & GRAUER PLLC
39533 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304
Tel: 248-594-0600/ Fax: 248-594-0610
Email: rtr@raderfishman.com

R0380848.DOC

*Attorneys for Defendants*

.

---

interest would not be disserved by an injunction.  *Ebay, 126 S.Ct. at 1839.*   In this case, 3D cannot possibly demonstrate any of these factors, much less all of them.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Susan M. Kornfield and Alan M. Harris, and I hereby certify that I have served the foregoing paper via first-class mail, postage prepaid on the following non-ECF participants:

Sidney David
Stephen B. Goldman
Samantha M. Kameros
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497

   s/R. Terrance Rader
R. Terrance Rader (P28747)
RADER FISHMAN & GRAUER PLLC
39533 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304
Tel: 248-594-0600
Fax: 248-594-0610
Email: rtr@raderfishman.com