UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| 3D SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:05-cv-74891 |
| v. ) | |
| ) | Hon. Avern Cohn |
| ENVISIONTEC, INC., ENVISIONTEC GMBH, ) | Magistrate Judge Hon. R. Steven |
| and SIBCO, INC., ) | Whalen |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF A. EL SIBLANI

I, A. El Siblani, submit this Declaration in support of Envisiontec Inc.'s Supplemental Brief In Opposition to Plaintiff 3D Systems, Inc.'s Motion to Dismiss Or Bifurcate Envisiontec, Inc.'s Antirust Counterclaim, dated November 10, 2006. The facts set forth below are based on my personal knowledge, and if called to testify, I could and would testify competently thereto:

1. I am the Chief Executive Officer of Envisiontec, Inc. ("Envisiontec"), one of the defendants in the above-entitled lawsuit.

2. 3D Systems' original complaint was filed on or about December 27, 2005. On or about March 9, 2006, 3D Systems issued a press release accusing Envisiontec's Perfactory and Vanquish products of patent infringement. 3D Systems issued its press release in advance of an upcoming trade show in Las Vegas in order to deter customers from buying Envisiontec's products. A copy of 3D Systems' press release is attached as Exhibit A to Envisiontec's Supplemental Brief. At the Las Vegas trade show, a representative of 3D Systems told at least one Envisiontec customer that Envisiontec would soon be put out of business. The same representative later told Envisiontec's customers in Chicago and Texas the same thing. As a

result of 3D Systems' conduct, customers have become fearful about doing business with Envisiontec. For example, during a presentation that I made to DaimlerChrysler during the last week of October, one of the attendees asked about this lawsuit and whether 3D System's activities would affect Envisiontec's survival.

3. 3D Systems has also intimidated and harassed Envisiontec's international customers and prospective customers. In March 2006, Envisiontec participated in a trade show in Hong Kong. Prior to the trade show, representatives of 3D Systems contacted Envisiontec's Hong Kong customers and prospective customers and told them about this lawsuit. The 3D Systems representatives told the customers and prospective customers that they would be sued if they purchased Envisiontec's products, and therefore, that they should not buy from Envisiontec. As a result, Envisiontec had to reassure the customers and prospective customers that this lawsuit over U.S. patent rights would not affect their ability to purchase and use Envisiontec's products in Hong Kong. Envisiontec also had to offer to indemnify our Hong Kong sales agents and customers to assuage their concerns.

4. During the last week of March and the first week of April 2006, Envisiontec attended a trade show in India. Prior to the trade show, representatives of 3D Systems faxed a press release concerning this lawsuit to Envisiontec's customers. One of the 3D Systems representatives told Envisiontec's customers that Envisiontec was no longer doing business and that it would be unable to supply resins or other accessories to support its rapid prototyping equipment. As in Hong Kong, Envisiontec had to offer to indemnify its Indian sales agents and customers. Envisiontec also had to personally visit its customers and assure them that Envisiontec was still doing business.

2

5. During the last week of March and the first week of April 2006, Envisiontec also attended a trade shown in Basel, Switzerland. During the show, 3D Systems' representatives threatened and intimidated Envisiontec's customers, as they did in Las Vegas, Hong Kong, and India. As a result, Envisiontec had to offer to indemnify its European customers.

6. As a result of 3D Systems' foregoing activities, Envisiontec has lost significant sales volume. For example, because of 3D Systems' activities before and during the Indian trade show, Envisiontec's Indian sales dropped from an average of about two (2) units per month to a total of three (3) units over the last eight (8) months. 3D Systems' tactics caused Envisiontec's Hong Kong sales to drop approximately 50% during the three (3) months following the Hong Kong trade show as compared to the same period in 2006. As a result of 3D's conduct at the Basel, Switzerland trade show, Envisiontec's European sales dropped by about 70% as compared to the same period in 2005.

7. 3D Systems has continued in its efforts to steal Envisiontec's technology. In early September 2006, Envisiontec attended the IMTS trade show in Chicago. At the show, Envisiontec displayed its Vanquish device. To protect exhibitors and their technologies, the IMTS prohibits the taking of pictures. In addition, Envisiontec put up a sign stating that picture taking was prohibited. During the show, two individuals wearing shirts bearing a 3D Systems logo approached Envisiontec's booth and took several pictures of the Vanquish device, in violation of IMTS rules. I reported the incident to show security. The next day, show security went to 3D Systems' booth and informed the two 3D Systems individuals that picture taking was prohibited. The security officer then asked to see their camera and deleted at least one Vanquish picture from it. The two 3D Systems individuals were identified as Greg Efherling and Derick Johnson. I understand Mr. Efherling to be 3D Systems' Vice President of North American Sales.

3

The Incident Report completed by the IMTS security officers is attached as Exhibit B to Envisiontec's Supplemental Brief.

8. To date, Envisiontec's total revenues from U.S. sales of the two accused devices, Perfactory and Vanquish, total about $4.4 million.

*I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.*

Executed on this, the 10th day of November, 2006.

A. El Siblani

4

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Susan M. Kornfield and Alan M. Harris, and I hereby certify that I have served the foregoing paper via first-class mail, postage prepaid on the following non-ECF participants:

Sidney David
Stephen B. Goldman
Samantha M. Kameros
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497

        s/R. Terrance Rader
        R. Terrance Rader (P28747)
        RADER FISHMAN & GRAUER PLLC
        39533 Woodward Avenue, Suite 140
        Bloomfield Hills, MI 48304
        Tel: 248-594-0600
        Fax: 248-594-0610
        Email: rtr@raderfishman.com