**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **3D SYSTEMS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:05-cv-74891 |
| v. | ) | |
| | ) | Hon. Avern Cohn |
| **ENVISIONTEC, INC., ENVISIONTEC GMBH,** | ) | Magistrate Judge Hon. R. Steven |
| and **SIBCO, INC.,** | ) | Whalen |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |

**DEFENDANTS' FIRST AMENDED ANSWER TO AMENDED COMPLAINT AND
COUNTERCLAIMS**

Pursuant to the Court's November 22, 2005 Scheduling Order, Defendants' Envisiontec,

Inc., Envisiontec GmbH, and Sibco, Inc. ("Defendants"), state for their First Amended Answer,

Affirmative Defenses, and Counterclaims to the Amended Complaint for Injunctive Relief and

Damages of 3D Systems, Inc., as follows:

**PARTIES**

1.      Defendants are without sufficient basis to admit or deny the allegations of

paragraph 1 of the Amended Complaint, and on that basis deny them.

2.      Defendants admit the allegations of paragraph 2 of the Amended Complaint.

3.      Defendants admit the allegations of paragraph 3 of the Amended Complaint.

4.      Defendants admit the allegations of paragraph 4 of the Amended Complaint.

## JURISDICTION AND VENUE

5.      Defendants deny the allegations of paragraph 5 of the Amended Complaint.

6.      Defendants deny that venue is proper as to Envisiontec GmbH.  Defendants admit that venue is proper as to Defendants Envisiontec, Inc. and Sibco, Inc.

## BACKGROUND FACTS

7.      Defendants are without sufficient basis to admit or deny the allegations of paragraph 7 of the Amended Complaint and on that basis deny them.

8.      Defendants deny the allegations of paragraph 8 of the Amended Complaint.

9.      Defendants deny the allegations of paragraph 9 of the Amended Complaint.

10.      Defendants deny the allegations of paragraph 10 of the Amended Complaint.

11.      Defendants admit that Plaintiff's Complaint for Injunctive Relief and Damages, filed December 27, 2005, alleges infringement of U.S. Patent Nos. 5,569,431, 5,571,471, 5,630,981, 4,929,402, 4,999,143, 5,137,662, and 5,345,391.  Except as expressly admitted herein, Defendants deny the allegations of paragraph 11.

12.      Defendants admit that the Amended Complaint alleges infringement of various patents.  Except as expressly admitted herein, Defendants deny the allegations of paragraph 12 of the Amended Complaint.

## PATENTS AT ISSUE

13.      Defendants admit that Exhibit E appears to be the first page of a text copy of U.S. Patent No. 5,569,431, and that it appears on its face to have issued on October 29, 1996. Defendants further admit that Exhibit E is entitled "Methods and Apparatus for Production of Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information

2

sufficient to form a belief as to the truth or falsity of the allegations of paragraph 13 of the Amended Complaint and on that basis deny them.

14.    Defendants admit that Exhibit F appears to be the first page of a text copy of U.S. Patent No. 5,571,471, and that it appears on its face to have issued on November 5, 1996. Defendants further admit that Exhibit F is entitled "Method of Production of Three-Dimensional Objects by Stereolithography," and that it lists Charles W. Hull as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 14 of the Amended Complaint and on that basis deny them.

15.    Defendants admit that Exhibit G appears to be the first page of a text copy of U.S. Patent No. 5,630,981, and that it appears on its face to have issued on May 20, 1997. Defendants further admit that Exhibit G is entitled "Method for Production of Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor. Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 15 of the Amended Complaint and on that basis deny them.

16.    Defendants admit that Exhibit H appears to be the first page of a text copy of U.S. Patent No. 4,929,902, and that it appears on its face to have issued on May 29, 1990. Defendants further admit that Exhibit H is entitled "Method for Production of Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor. Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 16 of the Amended Complaint and on that basis deny them.

17.     Defendants admit that Exhibit I appears to be the first page of a text copy of U.S. Patent No. 4,999,143 and that it appears on its face to have issued on March 12, 1991. Defendants further admit that Exhibit I is entitled "Method and Apparatus for Production of Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 17 of the Amended Complaint and on that basis deny them.

18.     Defendants admit that Exhibit J appears to be the first page of a text copy of U.S. Patent No. 5,137,662 and that it appears on its face to have issued on August 11, 1992. Defendants further admit that Exhibit J is entitled "Method and Apparatus for Production of Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 of the Amended Complaint and on that basis deny them.

19.     Defendants admit that Exhibit K appears to be the first page of a text copy of U.S. Patent No. 5,345,391 and that it appears on its face to have issued on September 6, 1994. Defendants further admit that Exhibit K is entitled "Method and Apparatus for Production of High Resolution Three-Dimensional Objects by Stereolithography" and that it lists Charles W. Hull as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 of the Amended Complaint and on that basis deny them.

20.     Defendants admit that Exhibit L appears to be the first page of a text copy of U.S. Patent No. 5,174,931 and that it appears on its face to have issued on December 29, 1992. Defendants further admit that Exhibit L is entitled "Method and Apparatus for Making a Three-Dimensional Product by Stereolithography" and that it lists Thomas A. Almquist as an inventor. Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 of the Amended Complaint and on that basis deny them.

21.     Defendants admit that Exhibit M appears to be the first page of a text copy of U.S. Patent No. 5,651,934 and that it appears on its face to have issued on July 29, 1997. Defendants further admit that Exhibit M is entitled "Recoating of Stereolithographic Layers" and that it lists Thomas A. Almquist as an inventor. Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21 of the Amended Complaint and on that basis deny them.

22.     Defendants admit that Exhibit N appears to be the first page of a text copy of U.S. Patent No. 5,891,382 and that it appears on its face to have issued on April 6, 1999. Defendants further admit that Exhibit N is entitled "Recoating of Stereolithographic Layers" and that it lists Thomas A. Almquist as an inventor. Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 of the Amended Complaint and on that basis deny them.

23.     Defendants admit that Exhibit O appears to be the first page of a text copy of U.S. Patent No. 5,902,537 and that it appears on its face to have issued on May 11, 1999. Defendants further admit that Exhibit O is entitled "Rapid Recoating of Three-Dimensional Objects Formed on a Cross-Sectional Basis" and that it lists Thomas A. Almquist as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 23 of the Amended Complaint and on that basis deny them.

24.     Defendants admit that Exhibit P appears to be the first page of a text copy of U.S. Patent No. 6,048,487 and that it appears on its face to have issued on April 11, 2000. Defendants further admit that Exhibit P is entitled "Recoating Stereolithographic Layers" and that it lists Thomas A. Almquist as an inventor.  Except as expressly admitted herein, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24 of the Amended Complaint and on that basis deny them.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 25 and on that basis deny them.

### FIRST CLAIM FOR RELIEF

#### Alleged Patent Infringement by Envisiontec GmbH

26.     Defendants incorporate by reference their answers to paragraphs 1-25 of the Amended Complaint.

27.     Defendants deny the allegations of paragraph 27 of the Amended Complaint.

28.     Defendants deny the allegations of paragraph 28 of the Amended Complaint.

29.     Defendants deny the allegations of paragraph 29 of the Amended Complaint.

## SECOND CLAIM FOR RELIEF

### Alleged Patent Infringement by Envisiontec, Inc.

30.     Defendants incorporate by reference their answers to paragraphs 1-29 of the Amended Complaint.

31.     Defendants deny the allegations of paragraph 31 of the Amended Complaint.

32.     Defendants deny the allegations of paragraph 32 of the Amended Complaint.

## THIRD CLAIM FOR RELIEF

### Alleged Patent Infringement by Sibco, Inc.

33.     Defendants incorporate by reference their answers to paragraphs 1-32 of the Amended Complaint.

34.     Defendants deny the allegations of paragraph 34 of the Amended Complaint.

35.     Defendants deny the allegations of paragraph 35 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

36.     Defendants have not infringed, and are not infringing, any valid and enforceable claim of U.S. Patent Nos. 5,569,431, 5,571,471, 5,630,981, 4,929,402, 4,999,143, 5,137,662, 5,345,391, 5,174,931, 5,651,934, 5,891,382, 5,902,537, and/or 6,048,487 (the "Patents-In-Suit," collectively), either directly, contributorily, by inducement, or otherwise.

### Second Affirmative Defense

37.     The Patents-In-Suit, including each claim thereof, are invalid for failure to comply with one or more requirements of the patent laws, including without limitation the

7

requirements of 35 U.S.C. §§ 102, 103, and/or 112.

### Third Affirmative Defense

38.    The Court lacks personal jurisdiction over Defendant Envisiontec GmbH.

### Fourth Affirmative Defense

39.    Defendant Envisiontec GmbH was not served with the Amended Complaint.

### Fifth Affirmative Defense

40.    Venue is not proper as to Defendant Envisiontec GmbH.

### Sixth Affirmative Defense

41.    The Amended Complaint fails to state a claim upon which relief can be granted, including, but not limited to, the assertion of claims of patent infringement against Sibco, Inc. and Envisiontec GmbH. Sibco, Inc. does not make, use, or sell rapid prototyping devices. Envisiontec GmbH does not make, use, or sell rapid prototyping devices in the United States. If 3D Systems does not voluntarily dismiss its claims against Sibco, Inc. and Envisiontec GmbH, Defendants intend to bring a motion to dismiss them from this case.

### Seventh Affirmative Defense

42.    3D Systems is estopped from asserting the claims of the Patents-In-Suit against Defendants or otherwise asserting that the claims should be construed to cover Defendants' products or processes, either literally or under the doctrine of equivalents.

### Eighth Affirmative Defense

43.    3D Systems' claims are barred by the doctrines of laches, estoppel, waiver, unclean hands, and other equitable remedies.

### Ninth Affirmative Defense

44.     Defendants have not willfully infringed the Patents-In-Suit.

### Tenth Affirmative Defense

45.     3D Systems has brought this action in bad faith, making it an exceptional case and thereby entitling Defendants to their costs and attorneys' fees pursuant to 35 U.S.C. § 285. 3D Systems' bad faith conduct is evidenced by numerous acts, including but not limited to its assertion, without a good faith investigation of infringement under *Fed. R. Civ. P.* 11, of the five (5) U.S. patents in the Amended Complaint in addition to the seven (7) U.S. patents that were asserted in the original Complaint. 3D Systems' actions are in violation of the Consent Judgment between 3D Systems and the Justice Department and such actions constitute antitrust and unfair competition.

### Eleventh Affirmative Defense

46.     Defendants had no notice of alleged infringement of any of the Patents-In-Suit prior to the filing of the Amended Complaint in this Action on June 2, 2006 or the filing of the Complaint in this Action on December 27, 2005. 3D Systems is prohibited from seeking damages for the infringement of any asserted patent prior to the date on which notice of infringement of the patent was given.

### <u>Reservation of Rights to Assert Other Affirmative Defenses</u>

47.     Defendants reserve the right to assert additional affirmative defenses as discovery progresses.

### <u>COUNTERCLAIMS</u>

### <u>Nature of the Action</u>

48.     Defendant Envisiontec, Inc. brings this counterclaim for: (1) a declaratory

judgment that the Patents-In-Suit are not infringed, invalid, and/or unenforceable under the patent laws of the United States, 35 U.S.C. §§ 1, *et. seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201; (2) damages and injunctive relief based on 3D Systems' monopolization and attempted monopolization of the industrial rapid prototyping market in the United States under Section 2 of the Sherman Act, 15 U.S.C. §2; and (3) damages and injunctive relief under the laws of the State of Michigan based on 3D Systems' tortious interference with Defendants' prospective economic advantage.

## The Parties

49.     Defendant and Counterclaimant Envisiontec, Inc. is a Michigan corporation having a principal place of business in Ferndale, Michigan.

50.     On information and belief, Plaintiff and Counterclaim Defendant 3D Systems, Inc. ("3D Systems") is a California corporation having a place of business at 26081 Avenue Hall, Valencia, California 91355.

## Jurisdiction

51.     Jurisdiction over Count I of this Counterclaim is based upon 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Jurisdiction over Count II of the Counterclaim is based upon 15 U.S.C. §15.  Jurisdiction over Count III of the Counterclaim is based upon diversity jurisdiction under 28 U.S.C. § 1333 and supplemental jurisdiction under 28 U.S.C. § 1367.

## COUNT I

### Declaration of Patent Non-Infringement, Invalidity, and/or Unenforceability

52.     Defendant Envisiontec, Inc. realleges and incorporates by reference paragraphs 44-51 of the Counterclaim.

53.     3D Systems filed suit against Defendants and alleged in its Amended Complaint that Defendants are infringing and/or have infringed the Patents-In-Suit.  As a result, Defendant Envisiontec, Inc. has a reasonable apprehension that 3D Systems will continue to assert the Patents-In-Suit against it.

54.     The Patents-In-Suit, including each claim thereof, are invalid, unenforceable, and/or not infringed by Defendant Envisiontec, Inc.

55.     Defendant has not infringed any valid claim of the Patents-In-Suit directly, contributorily, by inducement, or otherwise.

56.     3D Systems' actions in asserting that Defendant infringes the Patents-In-Suit have caused an actual and justiciable controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202 regarding the non-infringement, invalidity, and/or unenforceability of the patents.

57.     Defendant Envisiontec, Inc. is therefore entitled to a declaratory judgment that the Patents-In-Suit are not infringed, invalid, and/or unenforceable.

## COUNT II

### Monopolization and Attempted Monopolization of the Industrial Rapid Protoyping Market

58.     Defendant Envisiontec, Inc. ("Envisiontec") incorporates and realleges paragraphs 48-57 of the Counterclaim.

11

59.     Rapid prototyping ("RP") is a process by which a computer generated model is transformed into a three-dimensional prototype or model.   There are two types of RP systems: industrial and professional. Industrial machines are large, cost hundreds of thousands of dollars and are able to create functional prototypes, tooling inserts, etc. at low production volumes. Professional RP systems are smaller, less expensive, and generally use "ink jet" printing technology.  They are typically geared toward use in an office setting.  RP is significantly faster and less expensive than traditional methods of creating prototypes, such as milling, machining or grinding.   Because of the advanced technical nature of RP technology and the capital costs involved in developing and manufacturing RP equipment, there are significant barriers to entry in the U.S. industrial RP market.

60.     A relevant market to assess 3D Systems' anti-competitive conduct is the industrial RP market in the United States. The patent regulatory system in the United States, the fact that certain manufacturers sell industrial RP equipment in the United States, and the fact that 3D Systems' anti-competitive conduct is being felt in the United States establish the boundaries of the geographic market.

61.     3D Systems is by far the largest industrial RP company in the United States, accounting for the overwhelming majority of U.S. industrial RP system sales.  According to its Form 10-K for the fiscal year ending December 31, 2005, 3D Systems' revenues for 2005 totaled in excess of $139 million.

62.     3D Systems and Envisiontec, Inc. are the only two companies who sell rapid prototyping systems that use a process that involves curing photocurable liquids to create a prototype part.  Nevertheless, their respective technologies are vastly different.  Both Defendant Envisiontec, Inc.'s and 3D Systems' technologies convert a computer model to a plastic

prototype by curing a photocurable liquid.  However, Defendant's technology is more accurate, less expensive, and faster than the technology used by 3D Systems.   The 3D Systems process cures multiple layers of the liquid by scanning a laser across each layer at pre-selected locations. The laser cures each location in the layer to a constant depth.  The laser is essentially a moving point of light that must sequentially traverse each selected location in a given layer.  By way of analogy, the laser acts like a pencil drawing an outline across a piece of paper.  In contrast, Defendant's technology reflects a beam of light from an array of modulated mirrors, simultaneously curing each selected location on a surface of the photocurable liquid.  Thus, the exposure is analogous to a snapshot taken by a camera.  Defendant's use of modulated mirrors also provides "gray scaling" of the curing process which provides a variety of different cure depths at different locations in a given layer.  This "snapshot" technique reduces the exposure time, and consequently, the time required to complete a part.  The gray scaling technique provides variable curing depths, which allows for greater refinement and accuracy in the contours of the finished part.

63.    In violation of Section 2 of the Sherman Act, 15 U.S.C. § 15, 3D Systems has willfully and deliberately employed anti-competitive and predatory practices to establish and maintain monopoly power in the U.S. industrial RP market, including but not limited to amassing an all-encompassing anticompetitive patent domain totaling some 387 patents, including 184 issued U.S. patents and 53 pending U.S. patent applications.

64.     3D Systems has aggressively and consistently used its patent portfolio to deter market entry and competition in the U.S. industrial RP market, including but not limited to by threatening to sue and filing objectively baseless lawsuits against its would-be competitors, including companies such as EOS GmbH Electro Optical Systems, Objet Geometries Ltd., Quadrax Laser Technologies, Inc., Stratsys, Inc., EOS of North America, Inc., Aarotech Laboratories, Inc., Aaroflex Inc., and Advanced Manufacturing & Engineering Services. 3D Systems' purpose in bringing these lawsuits was to crush its potential competitors in the U.S. industrial RP market and to force its competitors to license their patents and technologies to 3D Systems. 3D's predatory, bad faith use of the litigation process was intended to interfere directly with the business relationships of its competitors and has allowed it to maintain its market dominance, including by eliminating competitors and/or exploiting their technologies and intellectual property to further expand its product lines.

65.     The objectively baseless nature of 3D's patent lawsuits against its competitors is underscored by the fact that none of them reached a substantive decision on the merits. Instead, 3D either drove the would-be competitor out of business and dismissed the case, and/or it forced the would-be competitor to cross-license its technology to 3D. For example, 3D prosecuted a seven-year patent lawsuit against Aaroflex, Inc. ("Aaroflex"). 3D publicized the lawsuit and/or threatened to sue Aaroflex's customers if they purchased Aaroflex's products. As a result, Aaroflex was effectively excluded from the U.S. SL market during the pendency of the case and driven into insolvency. After successfully crippling Aaroflex and forcing it out of the market, 3D dismissed its complaint on the eve of trial--against Aaroflex's objection--and prevented Aaroflex from pursuing its claims that the asserted patents were invalid.

66.     3D's bad faith assertions of patent infringement against Envisiontec are also objectively baseless. 3D Systems knew that Envisiontec's products do not infringe the Patents-In-Suit. 3D Systems nevertheless brought this action for no other reason than to improperly use the litigation process to interfere directly with Envisiontec's business relationships and maintain and/or increase 3D's monopoly power in the U.S. market for industrial RP products. Moreover, 3D Systems' bad faith intent and the objectively baseless nature of this lawsuit are evidenced by its present assertion of five (5) additional patents that were not asserted in its original Complaint. Envisiontec made no changes to its RP products between the filing of the original Complaint in December 2005 and the Amended Complaint in June 2006. If the newly added patents were legitimately asserted, they would have been included in 3D Systems' original Complaint. 3D Systems' belated assertion of these patents underscores its intent to harass and oppress Envisiontec in the hope of forcing it to capitulate. Given 3D Systems' flagrant misconduct in bringing this action and asserting the twelve (12) Patents-In-Suit, Envisiontec intends to bring a motion for sanctions under *Fed. R. Civ. P.* 11.

67.     This lawsuit is also part of an on-going scheme to force Envisiontec to surrender its superior technology and related intellectual property to 3D Systems. Evidence of this scheme includes but is not limited to the actions of 3D Systems' Chief Executive Officer, Abraham Reichental. In September 2005 Reichental threatened to put Envisiontec out of business if it would not cross-license its intellectual property to 3D Systems. This scheme, if successful, would allow 3D Systems to maintain and/or increase its market power by introducing new products that incorporate Envisiontec's superior technology.

68.     3D's efforts to misappropriate Envisiontec's technology extend beyond its attempt to extort a cross-license. On information and belief, 3D has begun commercializing a

rapid prototyping device that incorporates Envisiontec's technology, including but not limited to the use of a mirror array to simultaneously cure several locations on the surface of a liquid polymer. On information and belief, 3D's efforts to duplicate Envisiontec's technology are referred to as "Project Kermit" and/or the "Leapfrog Project." In addition, during a September 2002 trade show in Chicago, 3D representatives attempted to photograph Envisiontec's products in direct violation of show rules. Such activities are part of an on-going scheme by 3D to steal its competitors' technologies. For example, after filing the aforementioned lawsuit against Aaroflex, 3D used the discovery process to obtain access to and duplicate aspects of Aaroflex's Digital Signal Processor technology, allowing 3D to commercialize products incorporating that technology for a fraction of the development costs.

69.     Since filing this lawsuit, 3D Systems has embarked on a campaign of threatening and intimidating Envisiontec's foreign and domestic customers and potential customers. Three months after filing the original complaint--when it became clear that Envisiontec would not fold--3D Systems issued a press release publicly accusing Envisiontec's products of patent infringement. The allegations in the press release were objectively baseless and were made in bad faith for the purpose of interfering with Envisiontec's business relationships. The timing of the press release was intended to coincide with an upcoming Las Vegas trade shown in June 2006. At the Las Vegas trade show, 3D Systems knowingly made objectively baseless, false statements in bad faith to Envisiontec's customers and/or potential customers, stating that Envisiontec would soon be put out of business, and therefore, that they should not do business with Envisiontec. 3D Systems knowingly made similar objectively baseless, false statements in bad faith to Envisiontec's customers in Chicago and Texas.

70.     3D Systems has also intimidated and harassed Envisiontec's international customers and prospective customers. In March 2006, Envisiontec participated in a trade show in Hong Kong. 3D Systems' representatives made statements and representations concerning this lawsuit to Envisiontec's customers and/or prospective customers and warned them that they would be sued if they bought Envisiontec's products, notwithstanding the fact that this lawsuit concerns only U.S. patent rights that have no force in Hong Kong or elsewhere abroad. Such representations and statements were objectively baseless, knowingly false, and were made in bad faith for the purpose of directly interfering with Envisiontec's business relationships. Similarly, in March and April 2006, Envisiontec attended a trade show in India. 3D Systems knowingly made false representations to Envisiontec's customers and/or prospective customers at the India trade show, stating that Envisiontec was no longer doing business and that it would be unable to supply resins or other accessories needed to support its rapid prototyping equipment. Such representations were objectively baseless and were made in bad faith for the purpose of directly interfering with Envisiontec's business relationships. 3D Systems deployed similar tactics by threatening and intimidating Envisiontec's customers and/or prospective customers at a trade shown in Switzerland in April 2006.

71.     3D Systems' threats and intimidation tactics are part of an on-going strategy intended to injure and eliminate its competitors from the market. For example, after filing the aforementioned lawsuit against Aaroflex, 3D Systems threatened and intimidated that company's customers and would-be customers, which ultimately allowed 3D to drive Aaroflex into insolvency and out of the stereolithography business in the United States. 3D Systems used similar tactics to eliminate Quadrax Laser Technologies, Inc. as a competitor.

72.     3D Systems' anti-competitive tactics have been successful.  As a result, many of Envisiontec's customers and/or potential customers have refused to do business, refused to continue to do business, and/or demanded concessions as a condition of doing business with Envisiontec.  Consequently, the foregoing acts have caused Envisiontec to lose significant sales volume.  In addition, 3D Systems' conduct has impaired Envisiontec's ability to obtain and/or retain qualified employees.

73.     3D's anti-competitive practices also include attempts to capture the market by acquiring its competitors.  For example, in 2001, the Department of Justice filed suit against 3D Systems, *U.S. v. 3D Systems Corp. and DTM Corp.*, 1:01CV01237 (GK) (D. D.C.) ("The Government Antitrust Action"), in which it sought to enjoin the merger of 3D Systems and DTM Corporation under the Clayton Act.  3D Systems sought to capture over 80 percent of the U.S. industrial RP market by merging with DTM.    To settle the case, 3D Systems agreed to a Consent Judgment under which it was required to grant a perpetual license ("TLA") to its SL patents to a company with the ability and intent to compete in the U.S. industrial RP market.

74.     Undaunted by the Government Antitrust Action, on information and belief, 3D Systems solicited CMET, Inc., a company with no ability or intent to compete in the U.S. industrial RP market as the TLA licensee.   As a result of its conduct in bidding for the TLA, CMET was eventually charged with--and pled guilty to--obstruction of justice.  *U.S. v. CMET, Inc.*, (Crim. No. 06-075) (D. D.C.).  In addition, on information and belief, the Department of Justice's investigation into 3D Systems' wrongful conduct is on-going.

75.     3D Systems ultimately selected Sony Corporation ("Sony") as the TLA licensee.  However, in May 2006, Sony withdrew from the U.S. industrial RP market, dealing a further blow to competition.  Unsatisfied with Sony's departure, 3D Systems has continued its efforts to

18

drive Envisiontec from the market, including by filing its Amended Complaint in which it added five (5) patents to the seven (7) patents it had already asserted in its original Complaint and engaging in the campaign of threats and intimidation described above.  In addition, the TLA is fully transferable.  While Envisiontec denies infringing any of the Patents-in-Suit, it sought to eliminate the expense and business disruption of this lawsuit by attempting to negotiate a transfer of the TLA from Sony.  However, on information and belief, 3D has interfered with the process, and as a result, Envisiontec has been unable to even begin negotiations with Sony.

76.     On information and belief, in engaging in the foregoing acts, 3D Systems intended to and intends to monopolize the industrial RP market in the U.S.  Thus, to the extent it has not already succeeded, there is a dangerous probability that 3D Systems will succeed in monopolizing that market.  As a result, U.S. rapid prototyping consumers have been deprived of products that are superior to 3D's archaic, slower, and less efficient technology.

77.     Because 3D Systems' exclusionary conduct, lacking any legitimate business purpose, along with the exclusionary intent that can be inferred from such conduct, poses a danger to competition, it may be condemned even without a showing of a dangerous probability of success.

78.     Competition in the manufacture, sale and distribution of industrial RP products in the U.S. has been and will be harmed by 3D Systems' conduct.  Were it not for such conduct, industrial RP product consumers in the U.S. would have greater sources of such products, leading to increased output, lower prices, and a greater variety of RP technologies.

79.     The purpose and effect of 3D Systems' actions were and are to block competition from entering the industrial RP market in the U.S.  Its actions are not justified by any countervailing efficiencies, immunities, or legitimate business reasons.

80.     Defendant has been injured in its business by 3D Systems' antitrust violations because it has been prevented from making sales it otherwise could have made.

81.     Defendant reserves the right to plead additional facts concerning 3D Systems' violation of the antitrust laws based on evidence that is obtained during discovery.

## COUNT III

### Intentional Interference with Actual and/or Prospective Economic Advantage

82.     Defendant Envisiontec, Inc. incorporates and re-alleges paragraphs 48-81 of the Counterclaim.

83.     Defendant has valid existing and potential economic relationships with regard to industrial RP products, including equipment, resins, and accessories.

84.     Defendant has a valid expectation of developing and maintaining business relationships with its customers and potential customers.

85.     On information and belief, 3D Systems is and was aware of Defendant's potential economic relationships and its expectancy of future economic benefits through the offering of industrial RP products to customers.

86.     Despite this knowledge, 3D Systems has interfered with Defendant's actual and prospective economic advantage.  Three months after filing the original complaint--when it became clear that Envisiontec would not fold--3D Systems issued a press release publicly accusing Envisiontec's products of patent infringement.  The allegations in the press release were objectively baseless and were made in bad faith for the purpose of interfering with Envisiontec's business relationships.  The timing of the press release was intended to coincide with an upcoming Las Vegas trade shown in June 2006.  At the Las Vegas trade show, 3D Systems knowingly made objectively baseless, false statements in bad faith to Envisiontec's customers

20

and/or potential customers, stating that Envisiontec would soon be put out of business, and therefore, that they should not do business with Envisiontec. 3D Systems knowingly made similar objectively baseless, false statements in bad faith to Envisiontec's customers in Chicago and Texas.

87.     3D Systems has also intimidated and harassed Envisiontec's international customers and prospective customers. In March 2006, Envisiontec participated in a trade show in Hong Kong. 3D Systems' representatives made statements and representations concerning this lawsuit to Envisiontec's customers and/or prospective customers and warned them that they would be sued if they bought Envisiontec's products, notwithstanding the fact that this lawsuit concerns only U.S. patent rights that have no force in Hong Kong or elsewhere abroad. Such representations and statements were objectively baseless, knowingly false, and were made in bad faith for the purpose of directly interfering with Envisiontec's business relationships. Similarly, in March and April 2006, Envisiontec attended a trade show in India. 3D Systems knowingly made false representations to Envisiontec's customers and/or prospective customers at the India trade show, stating that Envisiontec was no longer doing business and that it would be unable to supply resins or other accessories needed to support its rapid prototyping equipment. Such representations were objectively baseless and were made in bad faith for the purpose of directly interfering with Envisiontec's business relationships. 3D Systems deployed similar tactics by threatening and intimidating Envisiontec's customers and/or prospective customers at a trade shown in Switzerland in April 2006.

88.     3D Systems' tactics have been successful. As a result, many of Envisiontec's customers and/or potential customers have refused to do business, refused to continue to do business, or demanded concessions as a condition of doing business with Envisiontec.

89.     As a direct and proximate result of such wrong and tortious conduct, Defendant has lost sales it would otherwise have made and suffered damages in an amount to be proven at trial.

90.     3D Systems undertook the foregoing wrongful and tortious conduct in bad faith, with malicious and wanton disregard, and in reckless indifference to Defendant's rights, entitling Defendant to punitive or exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Envisiontec, Inc. prays for judgment against 3D Systems as follows:

A.     That 3D Systems take nothing by way of its Amended Complaint;

B.     With respect to Count I of the Counterclaim:

    1.     That the Court declare that the claims of the Patents-In-Suit are invalid, unenforceable, and/or not infringed; and

    2.     That this case be adjudged exceptional pursuant to 35 U.S.C. § 285 and that Defendant be awarded its attorneys fees and costs in connection with this action;

C.     With respect to Count II of the Counterclaim:

    1.     For compensatory damages in an amount to be proven at trial under 15 U.S.C. § 2.

    2.     For an order trebling the amount of compensatory damages under 15 U.S.C. § 15;

      3.     For an order under 15 U.S.C. § 26 granting permanent injunctive relief as may reasonably be necessary or appropriate to eliminate the effects of 3D Systems' violations of the antitrust laws and to restore effective competition in the manufacture, sale, and distribution of industrial RP products;

D.     With respect to Count III of the Counterclaim:

      1.     For compensatory damages in an amount to be proved at trial;

      2.     For punitive damages to deter 3D Systems from further acts of tortious interference with Defendant's business relations and to deter 3D Systems from its illegal conduct; and

      3.     Preliminarily and permanently enjoining 3D Systems from interfering with Defendant's actual and/or prospective economic advantage, including but not limited to enjoining 3D Systems from making false statements to Defendant's customers and prospective customers;

E.     For an assessment of costs against 3D Systems; and

F.     Such other and further relief as the Court deems necessary and proper.

23

## **DEMAND FOR JURY TRIAL**

Pursuant to *Fed. R. Civ. P.* 38(b), Defendant Envisiontec, Inc. demands a trial by jury of

all issues so triable.

Dated: December 15, 2006                  Respectfully submitted,

                                          ENVISIONTEC, INC., ENVISIONTEC GMBH,
                                          AND SIBCO, INC.

                                          ___ s/R. Terrance Rader _____
                                          R. Terrance Rader (P28747)
                                          Steven R. Hansen (P69144)
                                          RADER FISHMAN & GRAUER PLLC
                                          39533 Woodward Avenue, Suite 140
                                          Bloomfield Hills, MI 48304
                                          Tel: 248-594-0600/ Fax: 248-594-0610
                                          Email: rtr@raderfishman.com

                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2006, I electronically filed the foregoing DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Susan M. Kornfield and Alan M. Harris, and I hereby certify that I have served the foregoing paper via first-class mail, postage prepaid on the following non-ECF participants:

> Sidney David
> Stephen B. Goldman
> Samantha M. Kameros
> LERNER, DAVID, LITTENBERG,
> KRUMHOLZ & MENTLIK, LLP
> 600 South Avenue West
> Westfield, NJ 07090-1497

>    s/R. Terrance Rader
> R. Terrance Rader (P28747)
> RADER FISHMAN & GRAUER PLLC
> 39533 Woodward Avenue, Suite 140
> Bloomfield Hills, MI 48304
> Tel: 248-594-0600
> Fax: 248-594-0610
> Email: rtr@raderfishman.com

R0361827.DOC