UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3D SYSTEMS, INC.,

    Plaintiff,

                                     Case No. 05-74891

-vs-                                        Hon: AVERN COHN

ENVISIONTEC, INC., ENVISIONTEC
GMBH; and SIBCO, INC.,

    Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY CO-INVENTOR DR. PAUL JACOBS AS DEFENDANTS' EXPERT

I.

This is a patent case. The background of the case is reflected in the Markman Memorandum And Order filed February 6, 2008. Defendants, Envisiontec, Inc., Envisiontec GmBH and Sibco, Inc. (Envisiontec), have filed a motion for summary judgment of non-infringement of the paradigm patents accompanied by multiple exhibits and supported by four (4) declarations one of which is that of Dr. Paul E. Jacobs. Dr. Jacobs was a Director of Research and Development for 3D Systems, Inc. (3D), from 1989 until 1997 and a named inventor in two (2) of the paradigm patents, as well as several of the asserted patents.

Before the Court is 3D's Motion To Disqualify Co-Inventor Dr. Paul Jacobs as Defendants' Expert (Dkt. 113). For the reasons that follow, the motion is GRANTED.[1]

---

[1] The Court is constrained to note that it is unfortunate that this long pending patent dispute should get hung up on this issue. The sideshow is in danger of becoming the circus. Envisiontec should have found an expert not tainted by prior association with 3D in a confidential relationship at the outset.

II.

3D says that Dr. Jacobs must be disqualified because

(1)     Dr. Jacobs was a former high level employee of 3D for eight (8) years.

(2)     Dr. Jacobs had access to confidential and privileged information relating to the patents-in-suit.[2]

(3)     Dr. Jacobs is an inventor of five (5) of 3D's patents being asserted in this action, including two (2) of the four (4) paradigm patents-in-suit.

(4)     Dr. Jacobs' testimony would be unfairly prejudicial, confuse the issues and mislead the jury.

Defendants oppose the motion arguing

(1)     3D seeks to deprive the jury of Dr. Jacobs' undisputed expertise, he being the only expert witness in the case with a background in stereolithography, the subject matter of the patents-in-suit, based on "flawed and vague" assertions that he was exposed to unspecified "confidential" or "privileged" information more than a decade ago.

(2)     Dr. Jacobs' role as an expert on non-infringement poses no possible threat to 3D's purportedly confidential and privileged information.

(3)     Dr. Jacobs is testifying solely on issues of non-infringement and is taking the Court's completed claim construction which is based entirely on

---

[2]While it cannot be located, Dr. Jacobs more likely than not signed an Employee Confidentiality Agreement while in the employ of 3D, since that was the company's customary practice during the period of his employment.

publicly available documents, and is applying it to Envisiontec's accused devices.

(4) Since Dr. Jacobs left 3D's employ more than a decade ago, long before the formation of Envisiontec and development of the accused devices, even if he was exposed to confidential and privileged information while in the employ of 3D, none of it could possibly be implicated by his role as Envisiontec's expert now.

III.

It is clear that the decision to disqualify an expert is a matter within the Court's discretion. See Eastman Kodak Co. v. AGFA-Gevaert N.V., 2003 WL 23101783, *1 (W.D.N.Y. Dec.4, 2003) (stating that "[f]ederal courts have the inherent power to disqualify an expert from participating in litigation." citing Popular, Inc. v. Popular Staffing Servs. Corp., 239 F. Supp. 2d 150, 152 (D.P.R.2003)). Expert disqualification may be warranted when "a party retains expert witnesses who previously worked for an adversary and who acquired confidential information during the course of their employment." Eastman Kodak, 2003 WL 23101783 at *1 (quoting Space Sys./Loral v. Martin Marietta Corp., 1995 WL 686369, at *2 (N.D. Cal. Nov.15, 1995). As one district court explained:

> . . . courts apply a two-step inquiry to evaluate whether disqualification is proper. First, the court asks whether the adversary had a confidential relationship with the expert. Second, the court asks whether the adversary disclosed confidential information to the expert that is relevant to the current litigation. The burden is on the party who seeks disqualification of an expert to establish that a confidential relationship exists and that the confidentiality has not been waived.

Sensomatic Electronic Corp. v. WG Security Products, Inc., 2006 WL 5111116 (E.D. Tx.

3

Feb. 9. 2006), citing Eastman Kodak, 2003 WL 23101783 at *2). In Sensomatic, the district court disqualified a former employee who was a named inventor. In Eastman Kodak, the district court held that a former employee who obtained confidential information during his employ must be disqualified as an expert.

IV.

As noted above, it is undisputed that Dr. Jacobs had a confidential relationship with 3D. The focus is then what, if any, relevant confidential information Dr. Jacobs had access to during his employ. Following extensive briefing by the parties, the Court had a problem discerning what confidential or privileged information Dr. Jacobs was heir to during his employment with 3D that plays out in his opinion on non-infringement. The Court, in an e-mail message to the parties, said that it appeared that at most while working for 3D Dr. Jacobs gained his expertise in stereolithography.

3D responded by letter as follows:

> To specifically address the question of what confidential or privileged information Dr. Jacobs was privy to during his employment with 3D Systems that "plays out" in his opinions on non-infringement, 3D Systems notes that Dr. Jacobs' expert report includes information that he learned while at 3D Systems which bears directly on his noninfringement position on the "means for sweeping" limitation [10] of the '537 paradigm patent, on which he is a co-inventor. Namely, in his opening report at paragraph 29, Dr. Jacobs states that "I recall at one time 3D Systems intentionally used a motor-driven threaded drive shaft to transmit motor vibration to the applicator." This is clearly internal confidential information of 3D Systems.
>
> Likewise, in his rebuttal expert report, Dr. Jacobs further states at paragraph 29 that "the patents in issue use a screw drive to generate some vibration on the recoater blade *for the purpose of better spreading the resin material*" (emphasis added). Given the fact that the '537 patent does

4

not disclose this, how else – but by being privy to internal confidential information – would Dr. Jacobs know about this supposed purpose?

and

Dr. Jacobs Notebook No. 124 shows his extensive involvement with many aspects of stereolithography at 3D Systems from 1/12/90 to 2/3/92, and in particular the subject matter of this litigation. Namely, in addition to Dr. Jacobs' work on the two-winged recoater blade described in Exhibit 6, this notebook includes Dr. Jacobs' work on vertical recoating blades (pages 4-5) and details of the "Trident" recoater blade (pages 10, 20, 23), which is specifically claimed in claim 3 of the '934 paradigm patent. It also shows his work on patent matters (pages 46 and 104).

Dr. Jacobs Notebook No. 245 further shows his involvement with 3D Systems' patent counsel and participation in privileged patent-related discussions at 3D Systems from 2/11/92 to 5/30/95 with respect to many different aspects of stereolithography that were being developed during his tenure at 3D Systems. See the following exemplary pages:

- p. 16 - prosecution of 3D Systems' patent applications

- p. 25 - work with Dennis Smalley on patent matters

- p. 35 - filing of patent applications

- p. 36 - working with patent counsel

- p. 41 - patent coverage strategy

- p. 48 to 49 - reporting on patent matters raised by Dennis Smalley; scope of patent coverage strategy

- p. 56 - participation in patent infringement analysis

- p. 61 - patent scope and patent prosecution

- p. 78 - working with outside patent counsel (Lyon & Lyon)

- p. 98 - working with Dennis Smalley and outside patent counsel (Lyon & Lyon)

- P. 104 - discussions concerning international patents

- p. 112 - patent infringement analysis

While Envisiontec steadfastly maintains that the information Dr. Jacobs obtained while at 3D has not played a role in his expert opinion on infringement, the issue is not so simple. As noted at the hearing, what the motion really invites is for the Court, or even a Special Master, to parse the expertise Dr. Jacobs brings to bear on the infringement motion between the specifics of the knowledge he gained while working at 3D and his knowledge generally in order to satisfy itself that Dr. Jacobs is free of taint. This is neither an easy nor reasonable task. 3D has identified at least one area in which Dr. Jacob's opinion is suspect. In the end, it is enough that Dr. Jacobs worked for ten (10) years at 3D and agreed to keep confidential what he learned there, as well as being a named inventor on a number of the patents asserted, to say that he ought not be allowed to offer expert testimony in this case. Envisiontec should look elsewhere for its expert.

SO ORDERED.

Dated: October 1, 2008       s/Avern Cohn
                              AVERN COHN
                              UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 1, 2008, by electronic and/or ordinary mail.

                              s/Julie Owens
                              Case Manager, (313) 234-5160