UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3D SYSTEMS, INC.,

    Plaintiff,

-vs-

               Case No. 05-74891
               Hon:  AVERN COHN

ENVISIONTEC, INC.,
ENVISIONTEC GMBH and
SIBCO, INC.,

    Defendants.

                  /

**MEMORANDUM OF REASONS
FOR ENTRY OF FINAL JUDGMENT (THIRD AMENDED JUDGMENT);
EXPRESSLY DETERMINING THAT THE JUDGMENT
IS A FINAL JUDGMENT; EXPRESSLY DETERMINING
THAT THERE IS NO JUST REASON FOR DELAY IN ITS
ENTRY; AND CERTIFYING THE CASE FOR IMMEDIATE APPEAL
UNDER FED.R.CIV.P. 54(b)**

I.  Introduction

A.

This is a patent case involving prototyping systems used for creating physical three-dimensional models of an object using solid imagery techniques, commonly called stereolithography.  The Amended Complaint (Doc. 15), claims that defendants' Prefactory and Vanquish machines infringe one or more of 12 patents owned by plaintiff.  The case was tried to a jury on three (3) designated patents and one (1) paradigm claim in each; a fourth designated patent and its paradigm claim was disposed of by summary judgment.

The Court stayed proceedings on the other eight (8) patents and the other claims in the designated patents.

Following entry of a Second Amended Judgment (Doc. 295) finding defendants infringed two (2) of the three (3) designated patents, defendants took an appeal to the Court of Appeals for the Federal Circuit. The appeal was dismissed, *3D Sys., Inc. v. Envisiontec, Inc.*, 426 Fed. Appx. 914 (Fed. Cir. 2011) because

> . . .the district court entered judgment on only designated claims, but it has not yet entered any judgment relating to the remaining claims and patents. The district court did not certify its judgment for immediate appeal pursuant to Fed.R.Civ.P. 54(b).

Defendants then filed a motion styled Defendants' Motion For Entry Of Final Judgment Under Rule 54(b), Or, In The Alternative, To Certify For Interlocutory Appeal (Doc. 326). Plaintiff opposes certification (Doc. 327). Contemporaneously with the filing of this memorandum, the Court has entered a final judgment, and certified it for immediate appeal under Fed.R.Civ.P. 54(b). As explained in *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 931 F.Supp. 1044, 1046 (E.D. NY 1996):

> Rule 54 provides a mechanism to 'avoid the possible injustice of a delay in entering judgment. . . .'

B.

What follows is an explanation of the Court's reasons for making the Second Amended Judgment (Doc. 295) a final judgment, immediately entering it and certifying the case for immediate appeal (Doc. 331). The reasons particularly relate to the manner in which the Court managed the case. As explained in Menell, Pasahow, Pooley & Powers, *Patent Case Management Guide*, p. xxix (Federal Judicial Center 2009):

> [b]ecause of the decentralized, general jurisdiction structure of federal courts in the United States, much of the experience relating to managing patent cases is siloed in particular judicial chambers. As one jurist aptly noted, best practices for patent case management have been transmitted largely through word of mouth.

Typically in a case involving a single patent, the Court directs the patent holder to identify a single claim, and stays proceedings on the other asserted claims. In this case, as noted above, 12 patents were involved, so case management followed a slightly different course.

## II. Chronology

### A.

The chronology describes the relevant events in the history of the case from the filing of the Amended Complaint (Doc. 15) to the entry of the Second Amended Judgment (Doc. 295).

1. The Amended Complaint For Injunctive Relief And Damages (Doc. 15) claims infringement of 12 patents owned by plaintiff, by the Vanquish and Prefactory machines sold by defendants. The 12 patents are:

> U.S. Patent No. 5,569,431 (the '431 Patent)
> U.S. Patent No. 5,571,471 (the '471 Patent)
> U.S. Patent No. 5,630,981 (the '981 Patent)
> U.S. Patent No. 4,929,402 (the '402 Patent)
> U.S. Patent No. 4,999,143 (the '143 Patent)
> U.S. Patent No. 5,137,662 (the '662 Patent)
> U.S. Patent No. 5,345,391 (the '391 Patent)
> U.S. Patent No. 5,174,931 (the '931 Patent)
> U.S. Patent No. 5,651,934 (the '934 Patent)
> U.S. Patent No. 5,891,382 (the '382 Patent)
> U.S. Patent No. 5,902,537 (the '537 Patent)
> U.S. Patent No. 6,048,487 (the '487 Patent)

2. Defendants denied infringement, and counterclaimed for violation of the antitrust laws (Doc. 17).

3. At a hearing on November 16, 2006, the Court bifurcated the antitrust counterclaim (Doc. 54, p. 38).

4. At the hearing the plaintiff advised the Court that there are two (2) sets of patents, stating:

> there are. . . two sets of patents to begin with. One set of patents is directed to the basic SLA technology, stereolithography technology, of making a three-dimensional model in cross-sectional planes and building it up in a liquid bath, and the other set of patents are directed to the concept of a reco[r]der that is actually used to traverse back and forth in the bath and lay the layers of material.

(Doc. 54, p. 11).

The Court then directed plaintiff to identify two (2) patents and one (1) claim in each (Doc. 54, p. 14). Plaintiff responded:

> I would like to suggest to the Court that it would be more fair, fairer to the plaintiff if we had an opportunity to submit for each of the two subject matters that are involved in this litigation at least two claims for each, one we choose would be broad and one we would choose would be narrow.

(Doc. 54, p. 16).

5. The Court explained its reasons for requiring plaintiff to designate two (2) patents and a single claim in each, as follows:

> [Plaintiff has] asked for a jury. A jury can only absorb only so much. Otherwise, it becomes a beauty contest. And a judge can absorb only so much.

(Doc. 54, p. 16).

6. Plaintiff then told the Court that there were seven (7) patents in the first class, and five (5) patents in the second class, and that it preferred to assert one (1) patent in each class, together with two (2) claims in each patent (Doc. 54, pp. 16-17). The Court agreed (Doc. 54, p. 17), stating:

> . . .it may turn out at some later date that that has to be changed, but that's how we are going to get started.

(Doc. 54, p. 18).

7. In Pretrial Order No. 1 (Doc. 52), the Court placed the 12 asserted patents into two (2) groups, as follows:

### EXHIBIT A

A. Group A Patents - Stereolithography

1. U.S. Patent No. 5,569,431
2. U.S. Patent No. 5,571,471
3. U.S. Patent No. 5,630,981
4. U.S. Patent No. 4,929,402
5. U.S. Patent No. 4,999,143
6. U.S. Patent No. 5,137,662
7. U.S. Patent No. 5,345,391
8. U.S. Patent No. 5,174,931

B. Group B. Patents - Recording

1. U.S. Patent No. 5,651,934
2. U.S. Patent No. 5,891,382
3. U.S. Patent No. 5,902,537
4. U.S. Patent No. 6,048,487

8. The order required plaintiff to designate a single patent for trial in each group, and two (2) claims in each of such patents, stating:

> Proceedings on the patents and claims other than the designated patents' claims are STAYED until further order of the Court.

9. The order formally bifurcated Counts II and III of the counterclaims, which claimed violation of the antitrust laws, to be tried separately, and directed that no action on the counterclaims be taken until further order of the Court. Importantly, the order concluded:

> [o]bjections to this order, if any, shall be filed within ten (10) days, and shall be preceded by a conference call with the Court.

No objections were filed to the order

10. On December 27, 2006, plaintiff by letter asked that it be allowed to designate two (2) patents in the first group, and designate two (2) patents in the second group, as follows:

> Of the 12 patents being infringed, 3D Systems would like to choose two patents in each of the first and second groups that are relevant to different aspects of defendants' machines. Within the first group, U.S. Patent No. 5,630,981 is directed to a first invention of producing a three-dimensional object from a build material that physically transforms when subjected to radiation, and U.S. Patent No. 4,999,143 is directed to a second invention of building three-dimensional objects from the material that incorporates removable supports.
>
> Within the second group, U.S. Patent No. 5,902,537 is directed to a third invention incorporating an applicator in combination with a vacuum pump for drawing the material into the applicator, and U.S. Patent No. 5,651,934 is directed to a fourth invention of forming three-dimensional objects incorporating a smoothing element having a plurality of substantially separate members on its lower surface for contacting the material.
>
> Thus, 3D Systems is requesting the opportunity to discuss modifying the Court's Order to allow 3D Systems to assert one claim from each of these four patents. The total number of claims would still be four, but these paradigm claims would be more representative of the two groups of patents, and at the same time would be focused on different aspects of

      defendants' machines. 3D Systems has requested defendants' consent to the foregoing, however, defendants have objected to 3D Systems' proposal.

11.    On January 03, 2007, plaintiff identified paradigm claims in two (2) patents: claims 10 and 11 in the '981 patent, and claims 1 and 2 in the '934 patent, noting its request to designate four (4) patents was still before the Court (Doc. 51).

12.    In Pretrial Order No. 2 (Doc. 59), the Court stated that it approved the designation of four (4) patents and one (1) claim in each patent for trial, and that plaintiff had done so, as follows:

| Patent | Claim |
|---|---|
| '537 Patent | Claim 81 |
| '934 Patent | Claim 2 |
| '981 Patent | Claim 11 |
| '143 Patent | Claim 35 |

13.    Thereafter, between January 17, 2007, and the commencement of trial on September 21, 2008, the docket reflects some 202 filings, including claim construction proceedings, summary judgment proceedings, proceedings sharping with particularity the issues for trial, as well as motions *in limine* and trial matters. All of the filings were directed to the issues shaped by the infringement contentions of plaintiff, and the responses by defendants, and all related to the four (4) designated patents and the paradigm claim in each.

14.    In the Memorandum And Order Adopting Report And Recommendation Of Special Master, And Granting In Part And Denying in Part Defendants' Motion For Summary Judgment Of Non-Infringement, And Denying Plaintiff's Sealed Motion For Summary Judgment Of Infringement (Doc. 167), the Court found that the Vanquish machine did not infringe the '143 Patent.

15. The Amended Pretrial Order (Doc. 178), and the Amendment To Amended Pretrial Order (Doc. 195), designated patents and paradigm claims

| | |
|---|---|
| '981 Patent | Claim 11 |
| '934 Patent | Claim 2 |
| '537 Patent | Claim 81 |

and the issues for trial.

16. After a six (6) day trial, the jury returned a verdict summarized as follows:

    (a) the '981 Patent - Claim 11: not infringed by the Prefactory and Vanquish machines;

    (b) the '934 Patent - Claim 2: infringed by the Vanquish machine;

    (c) the '537 Patent - Claim 81: not infringed by the Vanquish machine

17. The Court then entered an Amended Judgment (Doc. 282) consistent with the jury's verdict, and the Court's finding with regard to the '143 Patent.

18. Thereafter, the Court filed its Memorandum And Order Granting Plaintiff's Renewed Motion For Judgment As A Matter Of Law, And Denying Defendants' Renewed Motion for Judgment As A Matter of Law (Doc. 294), and entered a Second Amended Judgment (Doc. 295), ordering and adjudicating that:

    (a) the Prefactory and Vanquish machines infringed claim 11 of the '981 Patent;

    (b) the Vanquish machine infringed claim 2 of the '934 Patent;

    (c) the Vanquish machine does not infringe claim 81 of the '537 Patent;

    (d) the Prefactory and Vanquish machines do not infringe claim 35 of the '143 Patent

B.

What is most significant in the chronology is that at no time did plaintiff object to the manner in which the Court was managing the case, which included designation of four (4) patents and a paradigm claim in each for trial, and staying proceedings on the eight (8) other patents. Also, at no time did plaintiff assert that the other eight (8) patents or the claims in the four (4) asserted patents beyond the paradigm claims, raised duplicative or unique issues of infringement or were substantially different.

III. The Law

A.

Fed.R.Civ.P. 54(b) reads:

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In *Sears, Roebuck & Co. v. Mackey, et. al.*, 351 U.S. 427, 435 (1956), the Supreme Court noted that Rule 54(b) provides "a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claim actions, without waiting for final decisions to be rendered on all claims in the case," and that where there are multiple claims or parties involved, the district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties, only if the court expressly determines that there is no just reason for delay."

In *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7-8 (1980), the Supreme Court directed that the district court follow a two-step inquiry in evaluating whether to certify

a case for appeal under Rule 54. First, the district court must determine whether there is a final decision, and second, the district court must determine that there is no just reason for delay. *Id.*

B.

As to what is a final decision in a patent case, a finding of infringement of a claim is a finding of infringement of a patent. In *Pall Corporation v. Micron Separations, Inc.*, 66 F3d 1211, 1220 (Fed. Cir. 1995), the Court of Appeals for the Federal Circuit stated:

> [a] patent is infringed if any claim is infringed, *Intervet America, Inc. v. Kee-Vet Lab., Inc.*, 887 F.2d 1050, 1055, 12 USPQ2d 1474, 1477-78 (Fed. Cir. 1989), for each claim is a separate statement of the patented invention. 35 U.S.C. §282; *Jones v. Hardy*, 727 F.2d 1524, 1528, 220 USPQ 1021, 1024 (Fed. Cir. 1984).

C.

1.

As to the timing of entry of a final judgment, Wright, Miller, Cooper & Steinman, *Federal Practice and Procedure*, §2659 (footnotes omitted) says:

> [a]fter the district court has determined that the case before it involves multiple claims or multiple parties and after it has resolved at least one but fewer than all the claims or all the rights and liabilities of at least one party with finality and made a direction for the entry of judgment, it must decide whether to release its decision for appellate consideration by making an express determination that there is no just reason for delay. As described by the Supreme Court, "the District Court is used as a 'dispatcher.' It is permitted to determine, in the first instance, the appropriate *time when each 'final decision'* upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal.'" Because of the trial court's familiarity with the case, this decision rests in the discretion of the district judge. [Emphasis in original.]

\* \* \*

> No precise test exists for determining whether there is a just reason to delay the entry of judgment that can be satisfactorily or easily applied in every case. Notably, the absence of detailed criteria to guide the trial judges' exercise of discretion reflects a conscious decision by the Supreme Court not to restrict the operation of the rule within too narrow a framework.

2.

In *Loral Fairchild Corp.*, *supra* at 1047-1048, the district court (Rader, J.), in certifying adjudication of non-infringement as to one of the parties in a multi-party case, noted that

> [w]ith a number of trials remaining, the Federal Circuit's guidance on the proper scope of the claims will clarify the parties' rights and obligations, and may lead to substantial savings of time, resources and expenses.

3.

In *Corrosioneering, Inc. v. Thyssen Environmental Sys., Inc.,* 807 F2d 1279 (6th Cir. 1986), the court identified five (5) factors to be considered for a Rule 54(b) determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial; frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

IV. Discussion

A.

To properly manage what this Court considered a complex patent case, the Court limited the number of patents to be tried initially. It required the plaintiff to designate two (2) patents in each of two (2) groups. Presumably, the two (2) patents were representative of the patents in each group. It also required plaintiff to designate a paradigm claim in each of the four (4) patents. The Court then stayed further proceedings on the remaining patents and the remaining claims in each of the four (4) designated patents. Defendants did not object.

In so doing, the Court was exercising the broad discretion it has to properly manage a case. This discretion to limit the scope of trial in a patent case by limiting the number of claims that can be asserted has received approval of the Federal Circuit twice in 2011. *In re Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc.*, 639 F3d 1303 (Fed Cir 2011), and *Stamps.Com, Inc. v. Endicia, Inc.*, Case No. 2010-1328, 2011 WL 2417044 (Fed. Cir. June 15, 2011).

B.

As to there being a final judgment since "each claim is a separate statement of the patented invention," *Pall Corp., supra*, claim 11 of the '981 Patent has been adjudicated: the Prefactory and Vanquish machines each infringe it; claim 2 of the '934 Patent has been adjudicated: the Vanquish machine infringes it; and claim 81 of the '537 Patent and claim 38 of the '143 Patent have been adjudicated: neither the Prefactory machine nor the Vanquish machine infringes either patent. There is a complete record as to the adjudications. The adjudications are ripe for review.

C.

There is no just reason to delay entry of a final judgment. All of the factors listed in *Corrosioneering, Inc.*, *supra*, having been considered; they weigh in favor of entry. So, too, the factors discussed in *Loral Fairchild Corp., supra,* weigh in favor of entry.

And, as explained by defendants in their Memorandum In Support Of Defendants' Motion For Entry Of Final Judgment Under Rule 54(b) Or, In The Alternative, To Certify for Interlocutory Appeal (Doc. 326) (p. 3), having been found guilty as an infringer, delay in appellate review severely prejudices them:

> [h]ere, Defendants will suffer undue hardship if final judgment is not entered with respect to the Court's finding of infringement of claim 2 of the '934 Patent and claim 11 of the '981 Patent. The trial of the three paradigm patents in this case has taken over five years. The damages portion of the trial has yet to occur. And eight additional patents remain. In requiring the Plaintiff to select paradigm patents and paradigm claims, it is inconceivable that the Court intended to litigate each patent separately, or even groups of patents separately in back-to-back trials. Such a process would be duplicative, requiring multiple Markman hearings, multiple liability trials, and multiple damages trials. Such proceedings would tax the Court's limited resources. Moreover, both parties would suffer the undue hardship and expense of trying different versions of the case again and again before being able to appeal the Court's initial decision.
>
> Additionally, if the Court prevents the Defendants from immediately appealing the Court's judgment as a matter of law, it is likely that an appeal will not be available to the Defendants for *years*, if not a decade, as the parties litigate the remaining eight patents. Thus, for years Plaintiff will be able to claim that Defendants infringe Plaintiff's patents and use this information to pilfer Defendants' customers. The delay will cause substantial economic harm to the Defendants and effect the good will and reputation they have built over the years. Immediate appeal will provide the Defendants with an opportunity to prevent and alleviate such economic harm. An immediate appeal could also obviate the need for a damages trial.

13

>Accordingly, the Court should certify its March 10, 2011 order as a final judgment under Rule 54(b) disposing of each paradigm claim of infringement. This will allow the Court of Appeals for the Federal Circuit to review the appealable issues and potentially eliminate the need for a subsequent trial on damages.

## V. Conclusion

In a talk to the Eastern District of Texas Judicial Conference on September 27, 2011, Hon. Randall R. Rader, Chief Judge of the Federal Circuit Court of Appeals, announced the publication of The Model Order of the Advisory Council of the Federal Circuit for e-discovery governance. In his talk entitled *The State of Patent Litigation*, he observed (p. 10):

>[o]ur courts are in danger already of becoming an intolerably expensive way to protect innovation or prove freedom to operate. These vast expenses can force accused infringers to acquiesce to non-meritorious claims. This only serves as an unhealthy tax on innovation and open competition.

and that

>district courts have inherent power to control their dockets to further "economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

In *Landis*, Justice Cardozo noted that

>power [is] inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Id.*

What has been done in this case by the Court is fully consistent with Judge Rader's and Justice Cardozo's observations. And it is for the reasons above and consistency that the Final Judgment (Doc. 331), has been entered, and it has been certified for review by the Court of Appeals for the Federal Circuit.

       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated: October 6, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 6, 2011, by electronic and/or ordinary mail.

       S/Julie Owens
       Case Manager, (313) 234-5160

S:\LORI\CASES\3D Systems v. Envisiontec\Memorandum & Order Re Final Judgment.wpd